UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ROBERT EARL MANN, on behalf of himself and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALTEC INDUSTRIES, INC., an Alabama Corporation,<br><br>Defendant. | No. 2-20-cv-00273 WBS DB<br><br><br>ORDER RE: MOTION TO REMAND |

----oo0oo----

Plaintiff Robert Mann filed this class action against defendant Altec Industries, Inc. ("Altec") in Solano County Superior Court alleging various violations of the California Labor Code. (Compl. (Docket No. 1, Ex. A).) Defendant removed the action to this court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (Notice of Removal (Docket No. 1).) Before the court now is plaintiff's motion to remand for failure to meet the required amount in controversy. (Mot. to

1

Remand ("Mot.") (Docket No. 5).)

I.   Background

Plaintiff worked for defendant as a non-exempt employee in its manufacturing plant beginning in December 2018. (Compl. ¶ 10.) Plaintiff alleges eight causes of action in connection with his complaint: (1) failure to pay overtime wages (California Labor Code §§ 204, 510, 558, 1194, 1198); (2) minimum wage violations (California Labor Code §§ 1182.12, 1194, 1194.2, 1197); (3) failure to provide meal periods (California Labor Code §§ 226.7, 512); (4) failure to provide rest periods (California Labor Code §§ 226.7, 516); (5) failure to indemnify all necessary business expenditures (California Labor Code § 2802); (6) failure to provide accurate itemized wage statements (California Labor Code § 226); (7) failure to provide wages due at separation of employment (California Labor Code §§ 201-203); and (8) violation of California Business & Professions Code § 17200, et seq. Defendant filed a notice of removal based on CAFA on February 5, 2020. (Docket No. 1.)

II.   Discussion

"Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court." Arias v. Residence Inn by Marriott, 936 F.3d 920, 924 (9th Cir. 2019) (internal citations omitted). It was intended to be interpreted "expansively." Id. However, certain threshold requirements, such as the amount in controversy, must still be met. "CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the

'matter in controversy exceeds the sum or value of $5,000,000.'" Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 592 (2013) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)).

Here, plaintiff does not contest the minimal diversity and numerosity requirements; plaintiff solely argues defendant has failed to show by a preponderance of the evidence that the total amount in controversy exceeds $5,000,000. (Mot. at 1.) To determine the amount in controversy, the court must first look to the complaint. Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015). Here, the complaint does not allege a specific amount in damages. (See Compl.) In the absence of a precise number, defendant estimated that the amount in controversy is $5,160,737.50. (Notice of Removal ¶ 56.) Defendant now "has the burden to put forward evidence showing that the amount in controversy exceeds $5 million . . . and to persuade the court that the estimate of damages in controversy is a reasonable one." Ibarra, 775 F.3d at 1197. This can include affidavits, declarations, or "other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Id.

Defendant submitted a three-page declaration from Debbie Muhl, Altec's Human Resources Manager, in support of its motion to remand. (See Decl. of Debbie Muhl ("Muhl Decl.") (Docket No. 1-5).) Muhl declared that, based on Altec's payroll and timekeeping records from December 26, 2015 through January 21, 2020, there were 397 current and former hourly, non-exempt associates in California, who worked at least 49,720 weeks collectively. (Id. ¶¶ 3-6.) Non-exempt employees were paid on a

1 weekly basis and issued wage statements each week.  (Id. ¶ 8; see
2 also Supp. Decl. of Debbie Muhl ("Muhl Supp. Decl.") ¶ 6 (Docket
3 No. 6-1).)  The lowest hourly rate for these employees during the
4 period was $15.50.  (Muhl Decl. ¶ 7.)

5       Defendant relied on these numbers to estimate that the
6 amount in controversy was at least $5,160,737.50.  (Notice of
7 Removal ¶ 56.)  Specifically, defendant argues that plaintiff
8 could claim $1,155,990 in overtime wages, $497,200 in unpaid
9 wages and $424,440 in accompanying liquidated damages, $770,660
10 in unpaid meal breaks and another $770,660 in unpaid rest
11 periods, and $509,640 in waiting time penalties, for a total
12 estimated recovery of $4,128,590.  (Id. ¶¶ 28, 32, 36, 41, 45,
13 51.)  This figure, combined with an estimated 25 percent of the
14 total recovery in attorney's fees ($1,032,147.50), places the
15 amount in controversy over $5 million.  (Id. ¶ 55.)  Plaintiff
16 argues these estimates are exaggerated and that defendant relied
17 upon unreasonable assumptions to arrive at this total.  (See
18 generally Mot.)

19       When a party relies on a chain of reasoning that
20 includes assumptions, those assumptions must be reasonable.
21 Arias, 936 F.3d at 925 (citing Ibarra, 775 F.3d at 1199).  While
22 "[a]n assumption may be reasonable if it is founded on the
23 allegations of the complaint," the Ninth Circuit has suggested
24 "assum[ing] a violation rate of 100% may or may not [be] valid."
25 Id.

26       Defendant purportedly provided a "conservative
27 analysis" in its overtime wage analysis by assuming one one-hour
28 violation per employee (397) per week (49,720) at time and a half

4

of the minimum hourly rate ($23.25) to arrive at $1,155,990. (Notice of Removal ¶ 28.)  However, this calculation ignores the allegations in plaintiff's complaint.  The complaint does not allege that the non-exempt employees were not paid at all for the overtime hours worked.  Rather, it alleges that "non-exempt employees were not <u>properly</u> paid <u>at the correct overtime rate</u> for all hours worked in excess of eight hours per shift" because defendant "failed to include . . . non-discretionary Production and Attendance bonuses."  (Compl. ¶ 14 (emphasis added).) Defendant's calculation seems to assume that all 397 putative class members were not paid any overtime wages at all, rather than using plaintiff's theory that the overtime pay did not properly take bonuses into consideration.  As the employer, defendant is presumed to know how overtime wages were calculated and the actual rate paid, and could have used those figures in its estimation.  Accordingly, defendant's $1,155,990 estimate is ill-founded and overstated.

        Next, defendant's calculation for unpaid minimum wages and, by extension, liquidated damages, also sweeps too broadly. Defendant assumes each putative class member (397) is entitled to one hour of unpaid minimum wages per work week (49,720) for time spent donning and doffing protective gear, without offering any evidence to support its contention that each action took six minutes per day.  (<u>See</u> Notice of Removal ¶ 32.)  Accordingly, defendant has failed to offer proper evidence to support $921,640 of its estimated amount in controversy.  (<u>See</u> <u>id.</u> ¶¶ 32, 36.)

        Defendant also ignores the relevant class for purposes of calculating meal break violations.  In his complaint,

plaintiff narrowed his meal period violations to those who did not receive a meal period "before the end of the fifth hour of work and second meal period before the end of the tenth hour of work."  (Compl. ¶ 17.)  There is no allegation, or even a suggestion, in the complaint that all of the non-exempt employees fell into that category every week.  Again, as the employer, defendant could be expected to know, or at least be able to approximate, how many of the employees worked through a ten hour shift without the requisite meal break.  Rather than provide relevant information to determine the size of the class, defendant calculated one violation for all 397 non-exempt employees for the 49,720 weeks worked, resulting in an estimated recovery of $770,660 for meal break violations.  (Notice of Removal ¶¶ 41, 45.)  This overbroad definition of the relevant class, and consequently the damages recoverable, supports remanding the action.  See Miller v. A-1 Express Delivery Servs., Inc., No. 16-cv-06251-WHO, 2017 WL 462406, at *1 (N.D. Cal. Feb. 3, 2017).

        Finally, when estimating waiting time penalties, defendant assumes that each of the 137 separated employees suffered a wage violation for the entire 30-day period.  (Notice of Removal ¶ 51.)  As stated above, the Ninth Circuit has consistently found it is unreasonable to rely on maximum assumptions when defendant's evidence lacks specificity.  See, e.g., Arias, 936 F.3d at 925; LaCross v. Knight Transportation, Inc., 775 F.3d 1200, 1203 (9th Cir. 2015) (finding use of the maximum assumption reasonable after defendant included all available evidence in its amount in controversy computation).

1  Accordingly, defendant's estimated damages of $509,640 are
2  unsupported by the evidence provided.
3      While defendant need not "provide evidence proving the
4  assumptions correct," the assumed rate of violations must have
5  "some reasonable ground underlying them." Arias, 936 F.3d at
6  925-27 (quoting Ibarra, 775 F.3d at 1199) (internal quotations
7  omitted).  Defendant's sweeping assumptions fall short of the
8  Ninth Circuit's guidance for reasonability.  See id. at 925-27.
9  In sum, defendant's total amount in controversy of $4,128,590 is
10 unsupported, which in turn alters the attorney's fee calculation
11 responsible for carrying defendant's amount in controversy over
12 the threshold requirement.  (See Notice of Removal ¶ 55.)
13 Accordingly, defendant has failed to produce appropriate evidence
14 to support its amount in controversy calculation, and it cannot
15 avail itself of this court's jurisdiction.
16     IT IS THEREFORE ORDERED that plaintiff's motion to
17 remand (Docket No. 5) be, and the same thereby is, GRANTED;
18     AND IT IS FURTHER ORDERED that this action be, and the
19 same hereby is, REMANDED to the Superior Court of the State of
20 California, in and for the County of Solano.
21 Dated:  April 15, 2020

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE